NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |
| FIRSTBANK PUERTO RICO<br>Plaintiff,<br><br>v.<br><br>BARCLAYS CAPITAL INC.<br>Defendant. | Adv. Proc. No. 10-04103 (JMP) |

**MEMORANDUM DECISION GRANTING MOTION FOR CIVIL CONTEMPT SANCTIONS**

DICKSTEIN SHAPIRO
*Attorneys for FirstBank Puerto Rico*
1633 Broadway
New York, New York 10019

Jeffrey A. Mitchell, Esq.
Judith R. Cohen, Esq.

CLEARY GOTTLIEB STEEN & HAMILTON LLP
*Attorneys for Barclays Capital Inc.*
One Liberty Plaza
New York, New York 10006

Lindsee P. Granfield, Esq.
Boaz S. Morag, Esq.

JAMES M. PECK
United States Bankruptcy Judge

***Introduction***

Following entry of summary judgment in its favor, defendant Barclays Capital Inc. ("Barclays") seeks an award of civil contempt sanctions against FirstBank Puerto Rico ("FirstBank") for having prosecuted this adversary proceeding in willful violation of the bankruptcy court order (the "Sale Order") that protects Barclays from litigation related to its purchase of assets from Lehman. The sanctions would be in the form of damages to compensate Barclays for attorneys' fees and costs incurred in having to defend a case that never should have been brought. FirstBank opposes the requested relief.

On May 10, 2013, the Court issued its Memorandum Decision Denying Motion for Summary Judgment of FirstBank Puerto Rico and Granting Motion for Summary Judgment of Barclays Capital Inc. (the "Summary Judgment Decision"). The Court entered a related Order on May 23, 2013. FirstBank filed a Notice of Appeal on June 5, 2013. [ECF No. 69.] Thereafter, the parties stipulated, and the District Court ordered, that the briefing schedule on the appeal would be stayed pending a decision on the sanctions issue so that either party would be able to consolidate a possible appeal of the grant or denial of sanctions with the pending appeal of the Summary Judgment Decision. [Case No. 13-cv-04732, ECF No. 5.] This Memorandum Decision awarding sanctions assumes familiarity with the Summary Judgment Decision.[1]

***The Contempt Motion***

Barclays filed this motion for civil contempt as a companion to its motion for summary judgment. The parties stipulated that FirstBank's deadline to respond would be adjourned until

[1] Capitalized terms used but not otherwise defined in this Memorandum Decision shall have the meanings ascribed to them in the Summary Judgment Decision.

after a ruling on the cross-motions for summary judgment. [ECF No. 34.] The issues have been fully briefed, and the Court heard oral argument on October 23, 2013.

Barclays seeks damages from FirstBank for violating the injunction against suits set forth in the Sale Order and asserts that all elements of the test for civil contempt have been satisfied here – "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (citation omitted). The Court agrees and finds that sanctions are appropriate despite the fact that FirstBank appears to have pursued litigation against Barclays in the good faith belief that its claims were not barred by the Sale Order. The good-faith pursuit of a disputed litigation position is not a license to violate a clear and unambiguous injunction.

*Sale Order is Clear and Unambiguous*

An injunctive order must be "specific in terms" and "describe in reasonable detail … the act or acts sought to be restrained." *N.Y. State NOW v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989) (citing Fed. R. Civ. P. 65(d)). To comply with the requirements of specificity and clarity, an injunction must "be specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *Id.* at 1352 (citation omitted).

Paragraph 7 of the Sale Order enjoins the assertion of any claim against Barclays based on an interest in the Purchased Assets. It provides, in relevant part, that

> [e]xcept as expressly permitted by the [APA] or by this Sale Order, all persons and entities … holding Interests or Claims of any kind or nature whatsoever against or in [Lehman] or [Lehman's] interests in the Purchased Assets … arising under or out of, in connection with, or in any way relating to, [Lehman], the Purchased Assets, the operation of [Lehman's] businesses before the Closing Date or the transfer of [Lehman's] interests in the Purchased Assets to [Barclays], shall be and hereby are forever barred, estopped

> and permanently enjoined from asserting, prosecuting or otherwise pursuing against [Barclays] … such persons' or entities' Interests or Claims.

Stip. Ex. 8 ¶ 7.[2]

This language is "specific and definite enough" to constitute adequate notice that a suit against Barclays is proscribed conduct. FirstBank's argument that the definition of "Purchased Assets" cannot be determined from the four corners of the Sale Order is not sufficient to override the clear meaning of that order. Regardless of any uncertainty as to the application of the definition to the Disputed Securities, information regarding the Purchased Assets was available to any interested party, including FirstBank, as of December 18, 2008, provided that the party seeking discovery entered into a confidentiality agreement. FirstBank knew about the Sale Order and had the ability to confirm that the Disputed Securities were part of the Purchased Assets. In this instance, FirstBank chose to litigate in an attempt to recover the Disputed Securities from a purchaser that enjoyed the protections of the Sale Order. Such conduct, with knowledge of the injunction in the Sale Order, exposes the plaintiff to monetary damages for violating that injunction.

*Proof of Noncompliance is Clear and Convincing*

Noncompliance with the Sale Order is manifest: after all, FirstBank has persisted in its suit against Barclays despite repeated warnings that the litigation was a violation of the injunction.

Regardless of alleged ambiguities, the Clarification Letter "plainly defines [the Disputed Securities] as Purchased Assets."[3] *FirstBank Puerto Rico v. Barclays Capital, Inc.*, 492 B.R.

[2] References to "Stip." as used herein shall be to the parties' Stipulations of Fact submitted in connection with the cross-motions for summary judgment. [ECF No. 19.]

[3] The Clarification Letter specifically provided that the Purchased Assets would include "the securities owned by LBI and transferred to [Barclays] or its Affiliates under the [September 18] Repurchase Agreement … as specified on Schedule A previously delivered by Seller and accepted by [Barclays]." Declaration of Boaz S. Morag in

191, 200 (Bankr. S.D.N.Y. 2013). Under the terms of the injunction, holders of claims in Purchased Assets are "forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing" such claims against Barclays. Stip. Ex. 8 ¶ 7. Moreover, years before the Summary Judgment Decision, on February 22, 2011, the Court decided similar adverse claims involving Barclays in the adversary proceeding styled *Evergreen Solar, Inc. v. Barclays PLC*, Adv. Proc. No. 08-01633 (JMP), 2011 Bankr. LEXIS 629 (Bankr. S.D.N.Y. Feb. 22, 2011).

In that decision, the Court ruled that securities listed on Schedule A to the Clarification Letter are "Purchased Assets" under the Sale Order and determined that claims against Barclays with respect to such securities are barred by the Sale Order. *Evergreen Solar*, Adv. Proc. No. 08-01633 (JMP), 2011 Bankr. LEXIS 629 at *16-21 (Bankr. S.D.N.Y. Feb. 22, 2011). FirstBank was aware of that decision, and proceeded with claims against Barclays despite the obvious risk of an identical outcome in favor of Barclays.

In *Evergreen Solar*, the Court explained that Barclays was a good faith purchaser and was entitled to an "assurance of finality" concerning "who has rights to estate property." *Evergreen Solar*, Adv. Proc. No. 08-01633 (JMP), 2011 Bankr. LEXIS 629 at *16 (Bankr. S.D.N.Y. Feb. 22, 2011) (citations omitted). This is fully consistent with the well-established public policy of upholding the finality of sale orders issued by bankruptcy courts to encourage potential acquirers to make bids on assets in bankruptcy. *See Evergreen Solar*, Adv. Proc. No. 08-01633 (JMP), 2011 Bankr. LEXIS 629 at *20-21 (Bankr. S.D.N.Y. Feb. 22, 2011) (citations omitted).

---

Support of Barclays' Motion for Summary Judgment dated September 13, 2012 [ECF No. 16] Ex. 22 ¶ 1(a)(ii)(A). Schedule A includes CUSIP numbers and par values for the Disputed Securities. Stip. ¶ 22.

Given the decision in *Evergreen Solar*, FirstBank was on notice that it was pursuing claims with the potential of leading to sanctions. Nonetheless, FirstBank, in its papers and at oral argument, insisted that the District Court "ruled" that FirstBank's claims are not barred and its suit is not enjoined by the Sale Order because a motion to dismiss by Barclays was not granted in its entirety. FirstBank Br. Opp'n at 1. FirstBank raises the improbable defense that the District Court "permitted" it to proceed with its lawsuit with what amounts to immunity from this Court's injunction. *Id.* at 3, 17-18. That is a false premise.

An examination of the District Court's decision, as well as the transcript of the oral argument leading to that decision, reveals no express or implied grant of authority to FirstBank to violate the Sale Order injunction. The District Court was asked to decide under Federal Rule of Civil Procedure 12(b)(6) whether FirstBank had stated claims upon which relief could be granted. Instead of making any factual findings, the District Court quite properly simply "assumed as true FirstBank's allegation that the Disputed Securities were not Purchased Assets." *FirstBank Puerto Rico v. Barclays*, 492 B.R. at 193 n.1. *See also*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (explaining that "a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make finding of fact").

FirstBank may have believed that it was free to litigate, but that freedom was encumbered by the Sale Order itself. Its lawsuit against Barclays as the purchaser of significant financial assets in one of the largest and most prominent bankruptcy sales of all time was a decision bordering on the reckless. The lawsuit against Barclays is "clear and convincing" evidence of non-compliance with a Sale Order injunction that was designed to block the very behavior in which FirstBank chose to engage.

FirstBank also "knowingly chose not to make" a claim against LBSF "based on its breach of the Swap Agreement in failing to return the Disputed Securities" and instead sued Barclays[4] despite the Sale Order injunction. *FirstBank Puerto Rico v. Barclays*, 492 B.R. at 200. It acted with disregard of the injunction and continued its suit even after Barclays offered FirstBank one last chance to dismiss it claims with prejudice, with each side to bear its own fees and costs. Thus, noncompliance is clear and convincing.

*No Diligent Attempt to Comply*

FirstBank willfully has disregarded the injunction and has taken the position that its own rogue legal theory gave it the right to proceed against Barclays with impunity. Its ongoing litigation against Barclays amounts to a sustained violation of the Sale Order injunction and was not inadvertent.

In a letter to Barclays dated September 17, 2009, FirstBank stated that it had reviewed the APA and Clarification Letter and "assum[ed]" that the Disputed Securities had been transferred to Barclays in connection with the September 18, 2008 repurchase agreement between Barclays and LBI, and that the securities received by Barclays thereunder were agreed to be Purchased Assets. Stip. Ex. 10 at 1. FirstBank's stated intention in sending this letter was to learn the location of its collateral, but rather than responding to a reply from Barclays regarding the Disputed Securities, FirstBank commenced this litigation. Likewise, after discovery was completed and FirstBank knew all of the operative facts, it was given the option to discontinue this adversary proceeding and avoid any risk of sanctions, but FirstBank refused that offer.

---

[4] The Court accepts the truth of the argument that FirstBank proceeded at all times in good faith. However, subjective good faith does not excuse violation of an order of which a party was fully aware. In *Weber v. SEFCU*, 719 F.3d 72 (2d Cir. 2013), the Second Circuit recognized that a creditor had acted in a subjective good faith belief that its actions were permitted under the automatic stay, but rejected the argument that this meant that the creditor could not be held in willful contempt and liable to the debtor for actual damages caused by its violation. 719 F.3d 72, 82-83. The *Weber* reasoning applies here. Specifically, FirstBank's awareness of the Sale Order injunction and its "general intent simply to perform the act found to violate" that injunction "does not justify placing costs related to" the enjoined action onto Barclays, and warrants a finding of contempt. *Weber*, 719 F.3d at 82.

Morag Contempt Decl.[5] Exs. 86, 87. FirstBank was afforded several "last clear chances" to avoid the position in which it now finds itself.[6] Nonetheless, FirstBank proceeded at full speed and persisted. The pattern demonstrates that there has been no diligent attempt to comply with the injunction in the Sale Order. Accordingly, the third prong of the test for civil contempt has been met.

***Sanctions***

"Courts have inherent power to enforce compliance with their lawful orders through civil contempt." *In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527, 533 (Bankr. S.D.N.Y. 2007) (citing *Spallone v. United States*, 493 U.S. 265 (1990); *Shillitani v. United States*, 384 U.S. 364, 369 (1966)). "[C]ontempt powers inherently include the ability to sanction a party." *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000) (citations omitted).

"[S]anctions for civil contempt serve two purposes: to coerce future compliance and to remedy any harm past noncompliance caused the other party." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) (citation omitted). Courts are "vested with wide discretion" to fashion a proper remedy to achieve future compliance; however, "[t]he compensatory goal, by contrast, can only be met by awarding to the [contempt victim] any proven damages." *Id.* (citation omitted).

---

[5] References to "Morag Contempt Decl." as used herein shall be to the Declaration of Boaz S. Morag in Support of Defendant Barclays Capital Inc.'s motion for Civil Contempt Sanctions Against FirstBank Puerto Rico for Willful Violation of the Sale Order. [ECF No. 21.]

[6] FirstBank continued this litigation (i) after Barclays demonstrated to FirstBank in April 2010 that the Disputed Securities were in fact listed on Schedule A to the Clarification Letter; (ii) after the District Court held in its order granting Barclays' motion to refer the litigation to the bankruptcy court that "[a]ny remaining rights that [FirstBank] has in the collateral would need to be determined by analyzing the [e]ffect of the Bankruptcy Court's Sale Order"; (iii) after this Court ruled in *Evergreen Solar* that securities listed on Schedule A were Purchased Assets and, consequently, that claims against Barclays with respect to such securities are barred by the Sale Order, and (iv) after Barclays offered FirstBank the opportunity to dismiss its claims with prejudice, with each side to bear its own fees and costs. *See* Case No. 09-cv-10317, ECF No. 44; *Evergreen Solar*, Adv. Proc. No. 08-01633 (JMP), 2011 Bankr. LEXIS 629 at *16-17 (Bankr. S.D.N.Y. Feb. 22, 2011); Morag Contempt Decl. Exs. 85, 86.

Barclays is entitled to its reasonable counsel fees and costs incurred in defending against this litigation that has been pursued knowingly by FirstBank in violation of the Sale Order. This award of civil contempt sanctions will serve to shift the cost of litigation to a sophisticated financial institution that understood the risks and should have known better than to go after the purchaser of the Purchased Assets.

FirstBank argues that it was entitled to test its legal theories in court, especially in light of the District Court decision on Barclays' motion to dismiss. In this instance, however, the persistent pursuit of a collateral attack on the Sale Order comes with a price. Subjective good faith is a weak defense to a strong motion for sanctions, particularly in a situation such as this involving the needless infliction of millions of dollars in legal fees on a defendant that acquired the Purchased Assets at a time of extreme financial crisis in justifiable reliance upon the protections of the Sale Order.

The parties are directed to meet and confer in an attempt to reach consensus on the award of sanctions within twenty days. If the parties are unable to agree on the amount, either party may request an expedited hearing to resolve any disputes. Assuming the parties can agree on a number, Barclays shall submit an agreed order consistent with this Memorandum Decision. Agreement as to the award shall be without prejudice to any of the appellate rights of FirstBank.

SO ORDERED.

Dated: New York, New York
December 3, 2013

/s/ James M. Peck
______________________________
Honorable James M. Peck
United States Bankruptcy Judge